O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BHUPINDER RAI, OSCAR MARTINEZ, and AARON CERVANTES, individually and on behalf of all other persons similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>CVS CAREMARK CORPORATION; CVS PHARMACY, INC.; and DOES 1 through 1000, inclusive,<br><br>                    Defendants. | Case No.<br>CV 12-08717-JGB (VBKx)<br><br>**ORDER 1) DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION and 2) DENYING Defendants' Ex Parte Application**<br><br>**[Motion for Summary Judgment filed August 9, 2013]** |

     The Court has received and considered all papers filed in support of and in opposition to Plaintiffs' Motion for Class Certification, as well as the arguments advanced by counsel at the September 30, 2013 hearing.  For the reasons discussed below, the Court DENIES Plaintiffs' Motion for Class Certification.

# I.   BACKGROUND

## A.   Procedural Background

Plaintiffs Bhupinder Rai, Oscar Martinez, and Aaron Cervantes ("Plaintiffs") filed their Complaint as a class action in the California Superior Court for the County of Los Angeles on July 6, 2012.  Plaintiffs filed the First Amended Complaint ("FAC") on September 10, 2012.  (Not. of Removal, Ex. A, Doc. No. 1.) Defendants CVS Pharmacy, Inc. and CVS Caremark Corporation ("Defendants" or "CVS") removed the action to this Court on October 11, 2012.  (Id.)  On April 9, 2013, Plaintiffs filed a Second Amended Complaint ("SAC").  (Doc. No. 18.)  On June 12, 2013, Plaintiffs filed a Third Amended Complaint ("TAC") alleging claims for: 1) denial of meal periods (Cal. Labor Code §§ 226.7, 512); 2) denial of rest periods (Cal. Labor Code. § 226.7); 3) unlawful business practices (Cal Bus & Prof. Code §§ 17200, *et seq.*; and 4) recovery of penalties by private attorney general (Cal. Labor Code §§ 2699, *et seq.*).  (Doc. No. 28.)

On August 9, 2013, Plaintiffs filed a Motion to Certify Class ("Motion," Doc. No. 32), attaching the Declaration of Jeff Geraci ("Geraci Decl.," Doc. No.

33) attesting to Exhibits 1-21,[1] and Compendium of Class Member Declarations (Doc. No. 34).[2]  In the Motion, Plaintiffs invoke Federal Rule of Civil Procedure 23(a) and 23(b)(3), and ask the Court to certify a Plaintiff Class for their claims for failure to provide meal periods, failure to provide rest periods, and violation of the UCL, composed of:

> All persons currently or formerly employed by CVS
> in California as a Supervisor or Assistant

_____

[1] Defendants object to Plaintiffs' Exhibits 6-8, 11, 14, 16, 17, and 21 as lacking in foundation, not properly authenticated, and hearsay.  (Defs.' Objections to Evidence, Doc. No. 41.)  All these exhibits are "[A] motion for class certification ... need not be supported by admissible evidence." Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 599 (C.D. Cal. 2008); Cholakyan v. Mercedes-Benz, USA, LLC, 281 F.R.D. 534, 550 (C.D. Cal. 2012) ("Because evidentiary rules unrelated to expert testimony are not applied with rigor in deciding motions for class certification, all authentication and lack of foundation objections are overruled.").  "This is because at the class certification stage, the Court makes no findings of fact, nor any ultimate conclusions on Plaintiffs' claims . . . ." Velazquez v. Costco Wholesale Corp., No. 11-00508, 2011 WL 4891027, at *2 (C.D. Cal. Oct. 11, 2011).  The Court OVERRULES Defendants' objections.

[2] Plaintiffs filed a Request for Judicial Notice, requesting the Court take judicial notice of the Motion for Preliminary Approval of Class Action Settlement in Soto v. CVS Caremark Corporation, Superior Court of California, County of Los Angeles, Case No. BC468650. (Doc. No. 35.)  The Court may take judicial notice of the existence of court filings and another court's orders, although the Court may not accept as true the facts found or alleged in such documents.  See Peel v. BrooksAmerica Mortg. Co., 788 F. Supp. 2d 1149, 1158 (C.D. Cal. 2011) (citing Wyatt v. Terhune, 315 F.3d 1108, 1114 (9th Cir. 2003)).  Accordingly, the Court takes judicial notice of this court filing.

Manager, or equivalent positions, at any time
from July 6, 2008 to May 19, 2013 who worked a
shift of at least 3.5 continuous hours as the
sole employee with keys and authority to perform
each of the following functions: open a store,
its cash registers, safes, drop boxes, change
drawers, and offices.

(Mot. at 10.)  Plaintiffs also request certification of

three subclasses:

Meal Period Subclass: All members of the
Plaintiff Class who were not provided an
uninterrupted, duty-free meal period of not less
than 30 minutes, for approximately every five (5)
hours of work, and were not paid one (1) hour of
pay at the employee's regular rate of pay for
each late, missed, interrupted, or non-duty free
meal period in lieu thereof[;]

Rest Period Subclass: All members of the
Plaintiff Class who were not authorized and
permitted, an uninterrupted, duty-free ten (10)
minute net rest period per four (4) hours worked
or major fraction thereof in any work period, and
were not paid one (1) hour of pay at the
employee's regular rate of pay for each missed,
late, interrupted[,] or non-duty free rest period
in lieu thereof[; and]

17200 Subclass: All members of the Plaintiff
Class who were subjected to Defendants['ə]
unlawful, unfair or fraudulent business acts or
practices in the form of Labor Code and Wage
Order violations regarding Rest Periods and/or
Meal Periods.

(Id.)

4

Defendants opposed the Motion on August 30, 2013 (Doc. No. 40), attaching the Declaration of Lee Stanley ("Stanley Decl.," Doc. No. 42-1), attesting to Exhibits A-L; the Declaration of J. Chris Brown ("Brown Decl.," Doc. No. 42-2), attesting to Exhibits M-N; the Declaration of Jessica Durand ("Durand Decl.," Doc. No, 42-3; the Declaration of Paul Handley ("Handley Decl.," Doc. No. 42-4; the Declaration of Jennifer Zargarof ("Zargarof Decl.," Doc. No. 42-5), attesting to exhibits O-R; and Declarations of Putative Class Members and Store Witnesses (Doc. No. 42-6).

Plaintiff replied on September 13, 2013 (Doc. No. 43), attaching the Declaration of Jeff Geraci ("Geraci Decl. iso Reply," Doc. No. 43-1).

On September 20, 2013, Defendants filed an Ex Parte Application for Leave to File a Sur-Reply, attaching the Proposed Sur-Reply.[3]  (Doc. Nos. 44, 44-2.) Plaintiffs opposed the Ex Parte Application on September 23, 2013 (Doc. No. 45) and Defendants replied on September 25, 2013 (Doc. No. 46).

---

[3] Defendants request leave to file a sur-reply in order to respond to a "newly-articulated theory" in Plaintiffs' Reply.  The Court declines to consider any arguments raised for the first time in a reply brief. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (A "district court need not consider arguments raised for the first time in a reply brief.")  Thus, Defendants' Ex Parte Application is DENIED as moot.

**B.   Background**

Plaintiffs seek relief pursuant to California Labor Code § 226.7, which provides employees meal and rest periods established by an applicable Industrial Welfare Commission Wage Order, and California Labor Code § 512, which "requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work." Brinker Rest. Corp. v. Sup. Ct., 53 Cal. 4th 1004, 1041 (2012). An employer's obligation is to "provide a meal period to its employees" by offering a "reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." Id. at 1040.  An employer does not need to ensure that an employee do no work during an off-duty meal period.  Id.  However, "an employer's provision of an additional hour of pay does not excuse a section 226.7 violation.  The failure to provide required meal and rest breaks is what triggers a violation of section 226.7." Kirby v. Immoos Fire Protection, Inc., 53 Cal. 4th 1244, 1256-57 (2012).

1.   Plaintiff's Allegations

Plaintiff Rai was employed as an Assistant Manager at the Long Beach CVS store from May 2011 - October

6

2012, Plaintiff Cervantes was employed as a Shift
Supervisor in several Los Angeles stores from June 2006
– August 2009, and Plaintiff Oscar Martinez was
employed as a Shift Supervisor in several Los Angeles
stores from 2006 – November 2010. (Geraci Decl., Exhs.
1-3.) Plaintiffs allege that during the relevant
period it was the policy and practice of CVS to staff
its stores such that non-exempt Supervisors and
Assistant Managers were routinely required to attend to
business when they would otherwise be on a rest or meal
break, and were regularly not permitted to take a rest
and/or meal period. (TAC ¶ 20.)

The operation of each store during the class period
required keys, keypad codes, and key tags in order to
perform essential duties, such as: opening and closing
the store, opening safe and change drawers to issue
money for cash registers, and perform overrides. (Mot.
at 4.) Plaintiffs argue that CVS only authorized
management employees to use these codes, tags, and
keys, and strictly prohibited sharing the store keys
and tags. (Id. at 5.) Plaintiffs further contend that
until May 20, 2013, CVS uniformly required at least one
"key carrier" employee to open and remain in stores
until closing and the "key carrier" duties were
required to be performed throughout each shift. (Mot.
at 3-5.) They claim that compensation is owed for non-

compliant rest and meal periods "based on a uniform
company policy of not relieving Managers of 'key
carrier' duties and requiring Managers to remain on
premises during breaks, when they are the sole 'key
carrier' on duty." (Id. at 1.)

2.  CVS Meal and Rest Period Policies

The Parties do not appear to dispute that CVS's
formal meal and break policies were compliant during
the class period.  Throughout the relevant time period,
CVS had the following policies, applicable to all
California non-exempt employees:

> Meal Periods: Non-exempt employees who work 5
> hours in a shift are entitled to an unpaid,
> uninterrupted off-duty meal of at least 30
> minutes, which must begin before the 5th hour
> of work.  Employees who work more than 10 hours
> during a shift are entitled to a second off-
> duty 30 minute meal break beginning no later
> than 5 hour after the end of the first meal
> break.  Employees may leave the store during a
> meal break.  Employees may voluntarily waive
> the first meal period for shifts in which they
> work up to 6 hours, and they may waive the

second meal period if they work no more than 12 hours and took the first meal break in a timely manner.  If an employee's shift is more than 6 hours, he may not waive the first meal break, and if an employee's shift is more than 12 hours, he may not waive the second break. Employees can waive their meal period by informing the store manager or electing a wavier through SMART with the manager present. (Stanley Decl., Ex. A.)

Rest Periods: Employees are authorized to take a paid 10-minute rest break during each 4 hours or major fraction of 4 hours.  No break is required if the employee's total daily work time is less than 3.5 hours.  Employees who work shifts of 6-10 hours are permitted to take two paid 10 minute breaks.  (Id.)

Meal Period and Rest Period Premium Programs: In April 2008, CVS implemented a program in all its California retail stores to automatically pay a Meal Period Premium ("MPP"), equal to one hour of pay, any time a non-exempt employee did not record a meal period compliant with CVS's policies, limited to one per employee per

9

shift.  (Brown Decl. ¶ 3, Ex. M.)  A Rest
Period Premium is paid to employees who are not
authorized and permitted to take a minimum 10
minute rest period as directed by CVS's policy.
RPPs are limited to one per employee per shift,
and must be entered manually by the Store
Manager.  (Id.)

3.  CVS Delegation Policy

In March 2013, CVS implemented a program in which
non-exempt managers and supervisors could delegate
approval authority to a clerk prior to punching out and
leaving for a meal period. (See Geraci Decl., Ex. 6.)
The management functions managers and supervisors can
delegate include: approvals related to voids and
refunds, override functions, price modifications, and
keyed credit cards.  Additionally, the policy outlines
that clerks will have access to the change box or
change drawer to make change for large bills.  (Id.)

## II. LEGAL STANDARD[4]

Federal Rule of Civil Procedure 23 governs class actions.  Fed. R. Civ. P. 23.  A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).  The party may not rest on mere allegations, but must provide facts to satisfy these requirements. Doninger v. Pac. Northwest Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977) (citing Gillibeau v. City of Richmond, 417 F.2d 426, 432 (9th Cir. 1969)).

In addition to these prerequisites, a plaintiff must satisfy one of the three categories set out in Rule 23(b) in order to maintain a class action.  Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), a class must satisfy two conditions: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is

---

[4] Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of demonstrating that it has met each of the four requirements of Rule 23(a) and at least one of the Rule 23(b) requirements. Zinser v. Accufix Research Inst., 253 F.3d 1180, 1186 (9th Cir. 2001). To meet its burden, the moving party "'must provide facts to satisfy these requirements; simply repeating the language of the rules . . . is insufficient.'" In re Paxil Litig., 212 F.R.D. 539, 543 (C.D. Cal. 2003) (quoting Bates v. United Parcel Serv., 204 F.R.D. 440, 443 (N.D. Cal. 2001)) (ellipsis in original).

"The decision to grant or deny a motion for class certification is within the trial court's discretion." Bateman v. American Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010). A class certification motion requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim. Wall-Mart Stores, Inc., v. Dukes, 131 S.Ct. 2541, 2550 (2011). However, neither "the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a

class which apparently satisfies [Rule 23]." <u>United
Steel Workers v. ConocoPhillips Co.</u>, 593 F.3d 802, 809
(9th Cir. 2010).

### III. DISCUSSION

### A.   Ascertainability

"In addition to the explicit requirements of Rule
23, an implied prerequisite to class certification is
that the class must be sufficiently definite; the party
seeking certification must demonstrate that an
identifiable and ascertainable class exists." <u>Xavier
v. Philip Morris USA Inc.</u>, 787 F. Supp. 2d 1075, 1089
(N.D. Cal. 2011); <u>see also</u> <u>Thomas & Thomas Rodmakers,
Inc. v. Newport Adhesives & Composites, Inc.</u>, 209
F.R.D. 159, 163 (C.D. Cal. 2002) ("Once an
ascertainable and identifiable class has been defined,
plaintiffs must show that they meet the four
requirements of Rule 23(a), and the two requirements of
Rule 23(b)(3).").  "Courts have held that the class
must be adequately defined and clearly ascertainable
before a class action may proceed." <u>Schwartz v. Upper
Deck Co.</u>, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999).  The
class definition must allow future courts to determine
who was and was not bound by the judgment. <u>Deitz v.</u>

Comcast Corp., No. 06-06352, 2007 WL 2015440, at *8
(N.D. Cal. July 11, 2007).

CVS argues that Plaintiffs' proposed class is not
ascertainable as the time records retained by CVS do
not show who was a "sole key carrier" at any given time
because: 1) the time records do not show all employees
present at a particular time (e.g., loaned employees
and salaried store managers) and 2) some employees,
other than putative class members, such as pharmacists,
have override authority or have keys, but this
authority is not recorded on time records.  (Opp. at
13-15.)  Plaintiffs respond that the CVS policy
requires all employees, exempt and non-exempt, to be
listed on the store schedule.  (Reply at 7.)
Additionally, Plaintiffs contend that even if a
pharmacist, beauty department manager, or home health
manager could perform key carrier duties, this would
not make the class unascertainable because these other
positions are listed on the store schedule and CVS's
time records would still show when Supervisors and
Assistant Managers served as sole key carriers.  (Id.)

Plaintiffs have not pointed to any evidence that
CVS required store managers to be entered onto the
store schedule, and Defendants have presented evidence
that store managers do not always put themselves on the
schedule or do not work the hours they put on the

14

schedule (<u>see e.g.</u>, Dagnino Decl. ¶ 3; Ledger Decl. ¶ 6).  Additionally, it appears that the individuals with the ability to carry out "key carrier" duties varies from store to store; Plaintiffs have not identified a CVS policy which provides keys for broad categories of employees, and the evidence before the Court suggests otherwise.  For example, one Beauty Department Manager at Store 9674 does not have her own card for overrides or a set of keys (Del Junco Decl. ¶ 3), while a Beauty Department Manager at Store 9480 has override abilities and various keys and combinations used throughout the store (David Decl. ¶ 3).  (<u>See also</u> Garcha Decl. ¶ 7 (Beauty Department Manager has receiving, change drawer, and fragrance cabinet keys, but no override keys); Bryant Decl. ¶ 5 (clerk/cashier has had override abilities since August 2012); Ciocho Decl. ¶ 6 (Head Cashier has own override card and set of keys for most duties).)  Because of the variety of responsibilities and keys even within job descriptions, the Court agrees with Defendants that the proposed class is not sufficiently ascertainable from CVS's records.

     "A lack of ascertainability alone will general not scuttle class certification." <u>Red v. Kraft Foods</u>, No. 10-1028, 2012 WL 8019257, at *6 (C.D. Cal. April 12, 2012).  Thus, the Court assesses whether the Rule 23 factors have been met.

15

**B.   Federal Rule of Civil Procedure 23(a)**

**1.   Numerosity**

In determining whether under Rule 23(a)(1) joinder of all members is "impracticable," courts have held that the plaintiff need not show that it would be "impossible" to join every class member.  <u>Haley v. Medtronic, Inc.</u>, 169 F.R.D. 643, 647 (C.D. Cal 1996). Additionally, there is no particular number cut-off, as the specific facts of each case may be examined. <u>Ballard v. Equifax Check Servs., Inc.</u>, 186 F.R.D. 589, 594 (E.D. Cal. 1999).  Courts have not required evidence of specific class size or identity of class members to satisfy the requirements of Rule 23(a)(4). <u>Robidoux v. Celani</u>, 987 F.2d 931, 935 (2d Cir. 1993).

Plaintiffs argue that the proposed class consists of over 7,500 managers.  (Mot. at 10-11.)  Defendant does not contest numerosity.  (Opp. at 11 fn. 5.)

Thus, the Court finds that the numerosity requirement is satisfied.

**2.   Commonality**

Courts have construed Rule 23(a)(2)'s commonality requirement permissively.  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 953 (9th Cir. 2003).  "All questions of fact and law need not be common to satisfy the rule.  The

existence of shared legal issues with divergent factual
predicates is sufficient, as is a common core of
salient facts coupled with disparate legal remedies
within the class." Id. (quoting Hanlon v. Chrysler
Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)); see also
Haley, 169 F.R.D. at 648 ("[F]or the commonality
requirement to be met, there must only be one single
issue common to the proposed class.").

Plaintiffs contend that the commonality requirement
is satisfied because the claims of the proposed class
members turn on a single legal issue of whether, under
CVS's policy, CVS could provide managers lawful meal
and rest periods when they worked as sole key carriers.
(Mot. at 12.)

Defendants argue that Plaintiffs' proposed class
does not meet the commonality requirement for several
reasons. First, the proof required to prove or defend
Plaintiffs' claims requires individualized inquiries as
to why each employee did not take a meal break on a
given occasion since, under California law, employers
only need to provide the opportunity to take meal and
rest breaks, or compensate employees for denied meal
periods and rest breaks, not ensure that the employees
take them. (Opp. at 16-17.) Second, CVS has a policy
of automatically paying meal period premiums for missed
meal breaks, and Assistant Store Managers and

17

Supervisors had the ability to assign themselves rest period premiums, which were regularly paid. (Opp. at 17-18.) Third, Plaintiffs have not offered proof of a "key carrier" policy that required a "key carrier" to be in the store during all business hours. (Opp. at 19-20.) Finally, Plaintiffs' theory of understaffing and customer service concerns requires an individual inquiry into each store, shift, and employee. (Opp. at 20-21.)

Plaintiffs allege a specific unlawful practice, which applied to Assistant Managers and Supervisors statewide. There are common questions of law and fact here, including: 1) whether CVS had a policy requiring Assistant Managers and Supervisors to stay in the store when there were no other "key carriers" working; and 2) whether any such policy violated CVS's obligation to provide off-duty meal and rest breaks, as required by California law. Thus, the Court finds that the commonality requirement is met. Defendants' commonality arguments are addressed below in the discussion regarding the question of predominance. See Shulz v. QualxServ, LLC, Nos. 09-17, 09-2081, 2012 WL 1439066, at *5 (S.D. Cal. April 26, 2012)("Rule 23(a)(2) can be satisfied by even a single common question, but 23(b)(3) requires convincing proof that the common questions 'predominate.'") (citing Amchem

18

<u>Products, Inc. v. Windsor</u>, 521 U.S. 591 at 623-24; <u>Hanlon</u>, 150 F.3d at 1022); <u>Purnell v. Sunrise Senior Living Mgmt., Inc.</u>, No. 10-897, 2012 WL 1951487, at *2 (C.D. Cal. Feb 27, 2012).

### 3.   Typicality and Adequacy of Representation

In order for a court to find typicality, "a class representative must be part of the class" and "possess the same interest and suffer the same injury" as the members of the class.  <u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147, 157 (1982) (internal citations omitted).  To gauge typicality, a "court does not need to find that the claims of the purported class representative are identical to the claims of the other class members."  <u>Haley</u>, 169 F.R.D. at 649.

Plaintiffs assert that their claims are typical because they all served as non-exempt Managers, subject to the same "key carrier," meal, and rest period policies as the putative class, during the class period.  (Mot. at 13.)  Because Plaintiffs claim to have missed meal and rest breaks because of CVS policies, the nature of Plaintiffs' claims are typical of those of the putative class members.  Defendants do not argue otherwise.  Thus, the Court finds that the typicality requirement has been met.

19

### 4.   Adequacy of Representation

Traditionally, courts have engaged in a two-part analysis to determine if plaintiffs meet the requirements of Rule 23(a)(4).  First, the class representatives must not have interests antagonistic to the unnamed class members.  Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978). Second, the representatives must be able to prosecute the action "vigorously through qualified counsel."  Id. The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent."  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997) (citations omitted).

Without providing any authority, Defendants only cursorily state in a footnote that because Plaintiffs Cervantes and Rai were allegedly terminated because of inappropriate behavior, resulting in litigation, "and the issues described throughout [the Opposition] with all three Plaintiffs, they would be inadequate representatives for any class . . . ."  (Opp. at 7 fn. 6.)  Based on the record currently before the Court, the Court cannot conclude that there is a conflict of interest between Plaintiffs and the putative class members, or that the proposed representatives are unfamiliar with the factual basis for the claims.

20

Additionally, Defendants do not dispute that Plaintiffs' attorneys have any conflict or deficiency that would make them inadequate counsel.

Thus, the Court finds that adequacy requirement has been met.

## C.   Federal Rule of Civil Procedure 23(b)(3)

A plaintiff seeking to certify a class under Rule 23(b)(3) must show that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.   Predominance

Rule 23(b)'s requirement that common issues of law or fact predominate over individual issues is similar to, but more stringent than, Rule 23(a)'s commonality requirement.  In re Countrywide Financial Corp Securities Litigation, 273 F.R.D. 586, 596 (C.D. Cal. 2009) (quoting Amchem Products, 521 U.S. at 609).  The focus in the predominance inquiry is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "the relationship

21

between the common and individual issues." <u>In re Wells</u>
<u>Fargo Home Mortg. Overtime Pay Litigation</u>, 571 F.3d
953, 957 (9th Cir. 2009)(quoting <u>Local Joint Executive</u>
<u>Bd. of Culinary/Bartender Trust Fund v. Law Vegas</u>
<u>Sands, Inc.</u>, 244 F.3d 1152, 1162 (9th Cir. 2001);
<u>Hanlon</u>, 150 F.3d at 1022 (9th Cir. 1998)).

　　　Plaintiffs offer no evidence that Defendants
imposed a standardized policy across the California
stores requiring, other than the identical, conclusory
statements in former employees' declarations that they
were "not allowed to leave CVS premises during any rest
or meal break when [they] were the sole Manager or
Supervisor on duty . . . . [and were] trained and told
by CVS Management that it was CVS policy that when
there was no other Manager or Supervisor on Duty,
[they] could not leave the premises at any time" and
the fact that CVS implemented the delegation policy.
(<u>See</u> Compendium; Reply at 9.)  However, Defendants
provide evidence to the contrary.  Declarations of
current employees show that some non-managers and non-
supervisors had the ability to perform at least some of
the "key carrier" duties, even before the delegation
policy was implemented.  (<u>See e.g,</u> Alcantar Decl. (had
full override authority as a head cashier beginning in
April 2012); Bryant Decl. (given override ability as
clerk/cashier starting in August 2012); Ledger Decl. ¶

22

9 (pharmacists in store 8858 can do system overrides and take out change from box).)  This allowed Shift Supervisors and Assistant Managers to leave for an off-duty break, even when he or she is the only supervisor working at the time.  For example, a head cashier at store 9253 has her own override card as well as her own set of keys for most duties that require keys at the store.  Although she cannot receive delivery trucks, she has told delivery drivers to wait or return later if they arrive when the manager or supervisor on-duty was on a break.  (Ciocho Decl. ¶ 6; see also Rider Decl. ¶ 6 (shift supervisor has left his cell phone number when he wanted to leave the premises during a break).)

Additionally, the declarations Defendants provide reflect that it is rare for some Shift Supervisors and Assistant Managers to miss their meal or rest periods at all. (See generally Declarations of Putative Class Members and Store Witnesses.)  However, Plaintiffs provide several declarations showing that some supervisors were expected to clock out during meal periods, but were required to remain in the store and be available to work. (See generally Compendium of Class Member Declarations.)  This competing testimony is insufficient for the Court to find that CVS had a common practice or policy of denying putative class

members their meal and rest periods, and the Court cannot find that common issues predominate.  See Ordonez v. Radio Shack, Inc., No. 10-7060, 2013 WL 210223, at *11 (C.D. Cal. Jan. 17, 2013) ("Because of the competing testimony before the Court, plaintiff's evidence that defendant *may* have an illegal, written rest break policy is insufficient for this Court to find that common issues predominate.") (emphasis in original); Jimenez v. Allstate Ins. Co., No. 10-8486, 2012 WL 1366052, at *15 (C.D. Cal. Apr. 18, 2012) ("[I]n the absence of a common practice or policy or some other 'glue' to bind this class, commonality cannot be shown.")

In the absence of common evidence that putative class members were regularly forced to work through meal and rest periods when no other manager or supervisor was on duty, the Court would need to make individual inquiries as to why individual missed meal periods.  See Sultan v. Medtronic, Inc., No. 11-4132, 2012 WL 3042212, at *2 ("reasons that employees fail to take breaks can be manifold: the employee could have forgotten, wanted to finish assignments, were not hungry, did not want to leave the premises, wanted to leave early or, possibly, were manipulating their timecards"); see also Wren v. RGIS Inventory Specialists, 256 F.R.D. 180, 208-209 (N.D. Cal. 2009)

24

(finding the plaintiffs' meal break claims did not meet the requirement of Rule 23(b)(3) "in the absence of any explicit [employer policy] to which missed meals can be attributed and in light of the individualized inquires necessary to evaluate the [employer practices] as to meal breaks").  Particularly in light of CVS's written policies and the fact that the ability of specific employees to carry out "key carrier" duties varies from employee to employee and store to store, the totality of the evidence demonstrates that adjudication of the putative class members' meal and rest break claims will involve predominately individual issues regarding the reason putative class members missed meal or rest breaks.  Adjudication would essentially require mini-trials of CVS's employment practices at each store. Thus, the Court does not find that the predominance requirement is met.

**2.  Superiority**

"Rule 23(b)(3) also requires that class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" Hanlon, 150 F.3d at 1023 (quoting Fed. R. Civ. P. 23(b)(3)).  If each class member has to litigate numerous and substantial separate issues to establish

his or her right to recover individually, a class action is not 'superior.'"  <u>Zinser v. Accuflix Research Inst., Inc.</u>, 253 F.3d 1180, 1192 (9th Cir. 2001).  As described above, because there is such variety in which employees have what duties, and whether putative class members were able to take meal and break periods, individual inquiries predominate.  Thus, a class action is not superior to individual litigation in this case.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Class Certification and DENIES Defendants' Ex Parte Application as moot.

Dated:  <u>October 11, 2013</u>   _                              ____

                    Jesus G. Bernal
               United States District Judge